**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT ALLAN BAKER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 12-1330** |
| | ) | **Electronic Filing** |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff Scott Allan Baker ("Baker") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for disability insurance benefits ("DIB")

and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security

Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The parties have filed cross-motions for

summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been

developed at the administrative level.  For the reasons that follow, the Commissioner's motion

for summary judgment (*ECF No. 10*) will be denied, and Baker's motion for summary judgment

(*ECF No. 8*) will be denied to the extent that it requests an immediate award of benefits but

granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013,
succeeding former Commissioner Michael J. Astrue.  Social Security History-Social Security
Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on August 13, 2013).
Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action.
*Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

further administrative proceedings.  The decision of the Commissioner will be vacated, and the case will be remanded for further consideration of Baker's applications for benefits.

## II.     PROCEDURAL HISTORY

Baker protectively applied for DIB and SSI benefits on June 3, 2009, alleging that he had become "disabled" on January 21, 2005.  R. at 149, 156, 238.  The applications were administratively denied on October 28, 2009.  R. at 10, 93, 98.  Baker responded on December 14, 2009, by filing a timely request for an administrative hearing.  R. at 105-106.  On December 10, 2010, a hearing was held in Morgantown, West Virginia, before Administrative Law Judge ("ALJ") Jeffrey P. La Vicka.  R. at 27.  Baker, who was represented by counsel, appeared and testified at the hearing.  R. at 33-71.  Larry Ostrowski ("Ostrowski"), an impartial vocational expert, also testified at the hearing.  R. at 64-81.  In a decision dated January 24, 2011, the ALJ determined that Baker was not "disabled" within the meaning of the Act.  R. at 7-21.

On March 28, 2011, Baker sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council.  R. at 143-148.  The Appeals Council denied the request for review on August 15, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case.  R. at 1.  Baker commenced this action on September 17, 2012, seeking judicial review of the Commissioner's decision.  ECF Nos. 1-3.  Baker and the Commissioner filed motions for summary judgment on January 4, 2013, and February 4, 2013, respectively.  ECF Nos. 8 & 10.  These motions are the subject of this memorandum opinion.

## III.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision

is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.    THE ALJ'S DECISION

In his decision, the ALJ determined that Baker had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 12. Baker was found to be suffering from arthritis of the lumbar and cervical spine, leg pain, depression, diabetes mellitus, obesity, high cholesterol, high blood pressure, and common allergies. R. at 12-13. Although his high cholesterol, high blood pressure, and common allergies were deemed to be "non-severe," his remaining impairments were deemed to be "severe" under the Commissioner's regulations. R. at 12-13; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ

concluded that Baker's impairments did not meet or medically equal an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-14.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Baker's

"residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except that he is limited to simple routine,
> repetitive tasks, with only occasional interaction with the public, free from paced
> production, requiring only simple work related decisions, and no concentrated
> exposure to cold.

R. at 14. Baker had "past relevant work"[3] experience as an assistant manager for a fast food

restaurant. R. at 186. Ostrowski characterized that position as a "skilled"[4] job performed by

Baker at the "medium"[5] level of exertion. R. at 72-73. In response to a hypothetical question

describing an individual with the limitations contained within the ALJ's residual functional

capacity assessment, Ostrowski testified that the described individual could not perform the

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do
despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359,
n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual
functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation
process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within
the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§
404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations
governing the determination as to whether a claimant's work activity constitutes "substantial
gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine
and manual operations to be performed in order to obtain the proper form, quality, or quantity of
material to be produced. Skilled work may require laying out work, estimating quality,
determining the suitability and needed quantities of materials, making precise measurements,
reading blueprints or other specifications, or making necessary computations or mechanical
adjustments to control or regulate the work. Other skilled jobs may require dealing with people,
facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c),
416.968(c).

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

duties of the job previously held by Baker. R. at 73-74. Ostrowski explained that both the position held by Baker and the "light"[6] fast food services manager position listed in the Dictionary of Occupational Titles would require more than occasional interaction with members of the general public. R. at 72-74. Therefore, it was determined that Baker could not return to his past relevant work. R. at 19.

Baker was born on November 28, 1952, making him fifty-two years old on his alleged onset date and fifty-eight years old on the date of the ALJ's decision. R. at 34. On his alleged onset date, he was classified as a "[p]erson closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d). Baker became a "[p]erson of advanced age" on November 28, 2007, when he reached the age of fifty-five.[7] 20 C.F.R. §§ 404.1563(e), 416.963(e). He had a college education and an ability to communicate in English. R. at 36-37, 184, 191, 217, 248; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Baker could work as a kitchen helper, an equipment cleaner, or a hand packager. R. at 20. Ostrowski's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[8] R. at 75.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] In his decision, the ALJ did not mention Baker's passage from one age category to the next. R. at 19. This omission appears to be inconsequential, since Medical-Vocational Rules 203.15 and 203.22 would both direct a finding of non-disability in the absence of limitations extending beyond those included within the definition of "medium" work. 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3, Rules 203.15 & 203.22.

[8] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past

**V.      THE EVIDENTIARY RECORD**

Baker enlisted in the United States Air Force shortly after graduating from high school. R. at 535.  He was honorably discharged on January 31, 1976.  R. at 37.  After leaving the Air Force, Baker enrolled at California University of Pennsylvania.  R. at 37.  In 1980, he graduated with a bachelor's degree in social work.  R. at 36-37.

On June 15, 1980, Baker started to work as an assistant manager at a Burger King restaurant.  R. at 41.  He got married in 1983.  R. at 481.  Two sons resulted from the marriage. R. at 34.  In 1993, Baker's wife left him and relocated to California, taking the two sons with her. R. at 481.  The couple ultimately divorced in February 2007.  R. at 34.  Baker's oldest son is autistic and unable to speak, rendering telephonic communication with him impossible.  R. at 57, 296.  Baker testified that he could not afford a plane ticket to California.  R. at 57.  The distance between Baker and his children has caused him to experience depression.  R. at 56.

Due to the length of his service, Baker was one of the highest paid assistant managers on Burger King's payroll.  R. at 71.  He was laid off on December 15, 2003.  R. at 41, 62, 185. Baker testified that the layoff had been triggered by a decrease in Burger King's sales.  R. at 71.

Baker sought treatment through the Department of Veterans Affairs ("VA") on January 21, 2005.  R. at 295.  Certified registered nurse practitioner ("CRNP") Julianne Bellavance ("Bellavance") determined that he was suffering from diabetes, hypertension and depression.  R. at 298-299.  He was given prescriptions for Metformin, Atenolol and Prozac.  R. at 298-299.  A few days later, Bellavance signed a statement declaring Baker to be temporarily disabled from January 25, 2005, through December 31, 2005.  R. at 204.

---

work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

On November 15, 2005, Baker asked Bellavance to sign a letter that he had prepared.  R. at 291.  The letter described difficulties that Baker had experienced between 1993 and 2004.  R. at 291.  He was apparently trying to have Bellavance submit the letter to the Internal Revenue Service so that his $3,900.00 tax debt could be forgiven.  R. at 291.  Since the letter described Baker's problems prior to the initiation of his treatment at the VA, Bellavance refused to sign it.  R. at 292.  She also expressed concern that Baker was not adhering to his prescribed treatment regimen.  R. at 292.

Baker visited the office of Dr. Sarah Lumley on March 9, 2006.  R. at 430.  Adjustments were made to his medications in order to control his hypertension.  R. at 430.  Although Baker asked Dr. Lumley to certify him as "disabled," she declined to do so.  R. at 430.  In a treatment note, Dr. Lumley stated that she had classified Baker as "employable."  R. at 430.

Dr. Ramesh Patel performed a consultative physical examination of Baker on April 22, 2008.[9]  R. at 311-320.  After completing the examination, Dr. Patel reported that Baker could occasionally lift, and frequently carry, objects weighing up to fifty pounds.  R. at 317.  Dr. Patel further stated that, due to leg pain and muscle soreness, Baker could stand or walk for only one to two hours over the course of an eight-hour workday.  R. at 317.  Baker's sitting, pushing and pulling abilities were deemed to be unlimited.  R. at 317.  No other physical, postural or environmental limitations were found.  R. at 318.  Kresta Schlesman ("Schlesman"), a non-examining medical consultant, opined on May 1, 2008, that Baker was physically capable of performing a range of "medium" work that did not involve exposure to machinery, heights, or

[9] The record indicates that Baker protectively applied for benefits under the Act on February 20, 2008, and November 19, 2008.  R. at 180, 213.  Those applications were administratively denied.  R. at 214, 239.  Some of the consultative reports discussed in this opinion were prepared in connection with the earlier applications.

other workplace hazards.  R. at 206-212.  That same day, Dr. Michelle Santilli asserted that Baker had no medically determinable mental impairment.  R. at 321.

Dr. Lumley examined Baker on May 14, 2008.  R. at 423.  Baker complained of pain in his heels.  R. at 423.  An x-ray performed on May 21, 2008, revealed that he had a plantar heel spur on his right foot.  R. at 436.  On June 4, 2008, a steroid injection was administered to alleviate Baker's pain.  R. at 501.  Two weeks later, Baker reported an 80% improvement in his foot and asserted that he was "able to walk without limping."  R. at 501.  An ambulatory stress test ordered by Dr. Lumley yielded normal results.  R. at 443.

Baker visited Dr. Lumley again on August 13, 2008, complaining of pain in his legs whenever he needed to walk long distances.  R. at 421.  He stated that the pain was particularly noticeable on the back of his right leg.  R. at 421.  Dr. Lumley noted that Baker sometimes used a cane while walking.  R. at 421.  Baker also complained of pain in his lower back and right buttock.  R. at 421.  Objective testing was conducted on August 25, 2008, to ascertain the causes of Baker's symptoms.  R. at 346-347.  A duplex scan revealed that the flow of blood to his "right anterior tibial artery" was diminished.  R. at 346.  An x-ray of Baker's lower back left his attending medical professionals with the impression that he was suffering from minimal levoscoliosis, moderate degenerative spondylosis, and "[m]inimal ventral wedging of L1."  R. at 347.  Dr. Lumley referred Baker to the Orthopedic & Sports Physical Therapy Associates, Inc., for physical therapy.  R. at 367.  Treatment notes suggest that Baker felt "significantly better" after the therapy sessions.  R. at 407.

On February 5, 2009, Baker underwent a physical examination at a VA facility.  R. at 502.  It is not clear from the documentary record whether the examination was performed by Dr.

M. Dresser or Nurse Practitioner ("NP") M. Hawthorne ("Hawthorne").  R. at 502.  In any event,

the examiner recorded the following observations in Baker's treatment record:

> The veteran is requesting a nonservice-connected pension.  The veteran is right
> hand dominant.  The veteran would have difficulty with any industrial
> employment that required prolonged walking, sitting, or standing or any heavy
> lifting due to the right shoulder, elbow and neck pain.  The veteran would have
> difficulty with any sedentary employment that required prolonged sitting.

R. at 511.  It was noted that Baker had used a cane for support during the course of the

examination.  R. at 508.

On March 2, 2009, Dr. Paul Fox opined that Baker was physically able to engage in a

range of "medium" work activities that did not involve concentrated exposure to extreme heat.

R. at 359-365.  Discussing the reasons for his opinion, Dr. Fox stated that Baker's symptoms had

been controlled with treatment.  R. at 365.  Baker's subjective complaints were deemed to be

only partially credible.  R. at 365.

Dr. Nabil Jabbour performed a consultative physical examination of Baker on September

24, 2009.  R. at 471-475.  During the examination, Baker stated that he could walk for only

twenty minutes without having to stop because of back and leg pain.  R. at 471.  Baker further

explained that he sometimes needed to use a cane in order to keep his balance.  R. at 471.

Describing the musculoskeletal portion of the examination, Dr. Jabbour reported as follows:

> The patient was able to walk on his toes and heels and he was able to squat.  The
> patient's gait was normal.  The patient's grip strength was normal.  The patient's
> mobility in performing activities such as getting on and off examining table,
> walking on heels, and toes, squatting and arising from a squatting position, and
> arising from chair was normal.

R. at 473.  It was also noted that Baker had been alert, oriented and cooperative during the

examination.  R. at 472.

On October 5, 2009, Dr. Lanny Detore performed a consultative psychological evaluation of Baker. R. at 477-483. "Slight" to "moderate" limitations were found in Baker's abilities to understand, remember and carry out detailed instructions, make judgments concerning simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. R. at 477. Baker's abilities to understand, remember and carry out short, simple instructions were deemed to be only "slightly" limited. R. at 477. No "marked" or "extreme" limitations were identified. R. at 477. Dr. Detore observed that Baker had "ambulated with a cane" throughout the evaluation. R. at 481.

Dr. Douglas Schiffer, a non-examining psychological consultant, opined on October 15, 2009, that Baker was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. at 486. Dr. Schiffer stated that Baker was "able to carry out very short and simple instructions," and that his impairments did not restrict his "basic understanding and memory." R. at 486. Although some "moderate" limitations were noted, Dr. Schiffer indicated that Baker had no "marked" limitations. R. at 484-485.

On October 22, 2009, Dennis Craig ("Craig") asserted that Baker was physically capable of engaging in an unrestricted range of "medium" work activities. R. at 261-266. Craig found Baker's subjective complaints to be only partially credible. R. at 266. Baker's applications for DIB and SSI benefits were denied six days later. R. at 10, 93, 98.

During his colloquy with Ostrowski at the hearing, the ALJ described an individual who, in addition to the limitations contained in the ensuing residual functional capacity assessment, needed to use a cane for balance, could not climb ladders, ropes or scaffolds, and could engage in only occasional postural maneuvers. R. at 74. After listening to the ALJ's hypothetical

12

question, Ostrowski testified that no "medium" jobs existed in the national economy for an

individual with the described limitations.  R. at 75.  When the ALJ removed the condition

permitting the use of a cane, Ostrowski testified that the hypothetical individual could work as a

kitchen helper, an equipment cleaner, or a hand packager.  R. at 75.

Before concluding the hearing, the ALJ afforded Baker an opportunity to consider

amending his alleged onset date to February 5, 2009.  R. at 77-79.  Baker declined the offer.  R.

at 79.  His decision was heavily influenced by the fact that he was insured for Title II benefits

only through December 31, 2008.  R. at 12, 79, 181.  Relying on Ostrowski's testimony, the ALJ

concluded that Baker was not disabled.  R. at 20-21.

## VI.    DISCUSSION

The arguments raised by Baker all relate, in one way or another, to the ALJ's residual

functional capacity assessment and corresponding hypothetical questions to Ostrowski.  ECF No.

9 at 17-22.  A vocational expert's testimony cannot be relied upon to establish the existence of

jobs in the national economy consistent with a claimant's residual functional capacity unless the

question eliciting that testimony makes reference to all of the claimant's functional limitations.

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).  Where a credibly established limitation is

not described, there is a danger that the vocational expert will identify jobs requiring the

performance of tasks that would be precluded by the omitted limitation.  *Ramirez v. Barnhart*,

372 F.3d 546, 552-555 (3d Cir. 2004).  In this case, however, every limitation contained within

the ALJ's residual functional capacity finding was conveyed to Ostrowski at the hearing.  R. at

14, 74-75.  Indeed, the ALJ's hypothetical questions to Ostrowski included additional

limitations, including a climbing preclusion and a restriction permitting only occasional postural

maneuvers.  R. at 74-75, 80.  Ostrowski's testimony was clearly sufficient to establish that an

individual with the abilities and limitations found by the ALJ could work as a kitchen helper, an equipment cleaner, or a hand packager. R. at 75. Under these circumstances, Baker's challenge to the sufficiency of Ostrowski's testimony is more appropriately regarded as a direct attack on the ALJ's underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

When the record contains conflicting or inconsistent medical opinions, an administrative law judge is generally free to choose which opinion to credit and which opinion to reject. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011). In doing so, however, the administrative law judge must explain his or her reasons for crediting one medical assessment over another. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505-506 (3d Cir. 2009); *Reefer v. Barnhart*, 326 F.3d 376, 381-382 (3d Cir. 2003). The requirement that an explanation be provided facilitates the meaningful judicial review guaranteed by statute to every unsuccessful claimant. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 121 (3d Cir. 2000). An administrative law judge's duty to explain his or her reasons for rejecting medical evidence applies only to evidence that is both pertinent to a claimant's case and probative of the claimant's disability. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 203-204 (3d Cir. 2008).

In their treatment note, Dr. Dresser and Hawthorne observed that Baker "would have difficulty with any industrial employment that required prolonged walking, sitting, or standing or any heavy lifting." R. at 511. They went on to state that Baker "would have difficulty with any sedentary employment that required prolonged sitting." R. at 511. At the hearing, the ALJ asked Baker to consider amending his alleged onset date to February 5, 2009, which was the date of the treatment note. R. at 77-79. Baker rejected that request because his insured status under Title II had only lasted through December 31, 2008. R. at 79. The ALJ made no reference to the

treatment note in his decision.  R. at 10-21.  Baker argues that the ALJ committed reversible

error in failing to discuss the observations made by Dr. Dresser or Hawthorne.  ECF No. 9 at 17-

19.

In response to Baker's argument, the Commissioner points out that Hawthorne does not

qualify as an "acceptable medical source" under the applicable regulations.  ECF No. 11 at 21, n.

11; 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)(classifying "nurse-practitioners" as "other

sources").  As an initial matter, it is not clear whether the observations relied upon by Baker

should be attributed to Dr. Dresser or Hawthorne.  R. at 502-512.  Since both names appear in

the treatment record, it plainly appears that Dr. Dresser played some role in assessing Baker's

condition.  R. at 502.  Only an "acceptable medical source" can render a diagnosis establishing

the existence of a medically determinable impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a).

Nevertheless, opinions expressed by "other sources" can be used to demonstrate the impact that

an established impairment has on a claimant's ability to work.  20 C.F.R. §§ 404.1513(d),

416.913(d).  Since the treatment note in question describes the *effects* that Baker's established

impairments had on his ability to work, the distinction between "acceptable medical sources" and

"other sources" has little bearing on the issues disputed in this case.

The Commissioner contends that the statements made by Dr. Dresser or Hawthorne were

not necessarily inconsistent with the ALJ's residual functional capacity assessment.  She posits

that the term "industrial employment," as used in the treatment note, was not broad enough to

encompass the positions later identified by Ostrowski.  ECF No. 11 at 20.  Under the present

circumstances, this argument is unavailing.  When read in context, the term "industrial

employment" appears to include any type of work exceeding the demands of "sedentary

employment."  R. at 511.  Under the Commissioner's regulations, a person who is capable of

performing "medium" work is also deemed to be capable of performing "light" work.  20 C.F.R. §§ 404.1567(c), 416.967(c).  "Light" work often "requires a good deal of walking or standing." 20 C.F.R. §§ 404.1567(b), 416.967(b).  A person who does not "have the ability to do substantially all of these activities" is ordinarily limited to "sedentary"[10] work.  *Id.*  Since "sedentary" work typically "involves sitting," the language in the treatment note questioning Baker's ability to maintain a job requiring "prolonged sitting" necessarily called into doubt his ability to maintain any job existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1567(a), 416.967(a).  The views expressed by Dr. Dresser and Hawthorne cannot be discounted solely on the ground that the work described by Ostrowski did not constitute "industrial employment."

Furthermore, the treatment note cannot be rejected on the theory that it was overwhelmed by countervailing evidence.  *Johnson*, 529 F.3d at 203-205.  Baker's standing and walking abilities lie at the very heart of this case.  When questioned about his impairments at the hearing, Baker identified the pain in his legs as his most bothersome impairment.  R. at 42-45.  After completing his consultative physical examination, Dr. Patel reported that leg pain and muscle soreness would prevent Baker from standing for more than one to two hours over the course of an eight-hour workday.  R. at 317.  Dr. Jabbour, who examined Baker sixteen months later, did not detail Baker's abilities and limitations on a function-by-function basis.  R. at 471-476. Nonetheless, Dr. Jabbour's examination report contains language discussing Baker's alleged need to "use[] a cane to avoid losing his balance."  R. at 471.  Although that language appears in

---

[10] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

the portion of the report discussing Baker's subjective complaints, the remaining portions of the report do not contain inherently contrary findings. An ability to momentarily squat or maneuver around an examining table cannot be equated with an ability to stand or walk on a prolonged basis. R. at 473.

On August 13, 2008, Dr. Lumley stated that Baker's leg pain sometimes required him to use a cane. R. at 421. Dr. Dresser and Hawthorne reported on February 5, 2009, that Baker had been "able to walk on his heels, toes and do tandem walking with his straight cane for support." R. at 508. Eight months later, Dr. Detore observed that Baker had "ambulated with a cane" during the course of his mental status evaluation. R. at 481. In response to the ALJ's first hypothetical question, Ostrowski testified that no "medium" jobs existed for an individual who needed to use a cane for balance. R. at 75. Ostrowski was able to identify jobs falling within the hypothetical individual's residual functional capacity only after the ALJ removed cane use from the equation. R. at 75, 80.

The foregoing analysis illustrates that Baker's alleged walking and standing limitations, along with his concomitant need to use a cane, are particularly important to the disposition of this case. The treatment note prepared by Dr. Dresser or Hawthorne was not so lacking in probative value that the ALJ was free to implicitly reject it without explanation. *Johnson*, 529 F.3d at 203-205. That is especially true in light of the ALJ's offer to consider February 5, 2009, as an alternative onset date. R. at 77-79. Because the ALJ failed to explain his reasons for rejecting the limitations described by Dr. Dresser and Hawthorne, his decision is not supported by substantial evidence. *Reefer*, 326 F.3d at 381-382.

The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The

remaining question is whether a remand for further development of the record is needed.  An

immediate award of benefits is justified only where "the evidentiary record has been fully

developed," and where "the evidence as a whole clearly points in favor of a finding that the

claimant is statutorily disabled."  *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010).

Baker alleges that he became "disabled" on January 21, 2005.  R. at 149, 156.  He testified that

he had chosen that date because of low finances.  R. at 41.  On March 9, 2006, Dr. Lumley stated

that Baker was still "employable."  R. at 430.  Even if Baker's condition later deteriorated

enough to render him "disabled" under the Act, a legitimate question remains as to when his

"disability" began.  Moreover, it is not clear from Ostrowski's testimony whether Baker's

alleged need for a cane would preclude him from maintaining a full-time job.  Ostrowski testified

that the national economy offered no "medium" jobs that an individual could perform while

using a cane.  R. at 75.  The availability of jobs at the "light" and "sedentary" levels of exertion

was never addressed.[11]  Since there are unresolved factual disputes in this case, the proper

remedy is a remand for further proceedings rather than a judicially-ordered award of benefits.[12]

Baker must be afforded "an opportunity to be heard" during the course of the upcoming

administrative proceedings.  *Thomas v. Commissioner of Social Security Administration*, 625

F.3d 798, 800-801 (3d Cir. 2010).  The Commissioner should keep in mind that Baker will not

---

[11] Although it appears that the Commissioner's regulations would dictate a finding of disability at both of these exertional levels once Baker reached advanced age, *see* Medical-Vocational Rules 201.06 and 202.06, such determinations are to be made initially by the Commissioner.

[12] In light of this determination, Baker's alternative argument concerning the ALJ's evaluation of his credibility need not be addressed.  ECF No. 9 at 20-22.  It suffices to say that, on remand, the Commissioner must give "serious consideration" to Baker's subjective complaints.  *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993).

necessarily be precluded from procuring benefits if it is determined that he was still able to work on his alleged onset date. If Baker became "disabled" on a subsequent date, he need only satisfy the Act's twelve-month durational requirement in order to receive prospective benefits. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Furthermore, evidence postdating the expiration of Baker's insured status under Title II may shed some light on his condition during the insured period. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1380-1383 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004). The amended onset date suggested by the ALJ followed the expiration of Baker's insured status by only thirty-six days. R. at 77-79, 181. This is not a case in which a statutory disability is alleged to have been caused by a sudden, discrete event occurring after the expiration of a claimant's insured status. Therefore, Baker may be able to demonstrate that he was disabled before December 31, 2008, by relying on documentary evidence of his condition during the early part of 2009. *Ivy v. Sullivan*, 898 F.2d 1045, 1048-1049 (5th Cir. 1990). If Baker establishes the existence of a disability beginning after the expiration of his insured status, he can still receive benefits under Title XVI. *Bowen v. Galbreath*, 485 U.S. 74, 76, 108 S.Ct. 892, 99 L.Ed.2d 68 (1988)(explaining that Title XVI "provides SSI benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status").

## VII. CONCLUSION

The Commissioner's decision denying Baker's applications for DIB and SSI benefits is not "supported by substantial evidence." 42 U.S.C. § 405(g). The motion for summary judgment filed by the Commissioner (*ECF No. 10*) will be denied. The motion for summary judgment filed by Baker will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for

further administrative proceedings.  The decision of the Commissioner will be vacated, and the case will be remanded for further consideration of Baker's applications for benefits.

Date: September 18, 2013

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:      All counsel of record